1 | DAVID OLSHAN, ESQ.
Nevada Bar No. 4126
2 | CHRISTENA GEORGAS-BURNS, ESQ.
Nevada Bar No. 14314C
3 | NEVADA LEGAL SERVICES, INC.
530 S. 6th Street
4 | Las Vegas, Nevada  89101
(702) 386-0404/dolshan@nlslaw.net
5 | Attorneys for Plaintiff,
RAYSAWN BROWN

6

7

8

9

**UNITED STATES DISTRICT COURT**
10 | **FOR THE DISTRICT OF NEVADA**

11 | RAYSAWN BROWN,

12 |             Plaintiff,                          **COMPLAINT FOR DAMAGES,**
                                                    **DECLARATORY AND INJUNCTIVE**
13 |       v.                                        **RELIEF**

14 | SUTHERLAND GLOBAL SERVICES, Inc.,

15 |             Defendant.

16 | INTRODUCTION

17 |       Plaintiff, RAYSAWN BROWN, brings this action against the Defendant,

18 | SUTHERLAND GLOBAL SERVICES, Inc., for violations of Americans with Disabilities Act

19 | and NRS 613.330 for the refusal to accommodate, retaliation against, and wrongful termination

20 | of, Plaintiff.

21

22

23

24

1

1        *Jurisdiction and Venue*

2        1.        28 U.S.C. § 1331 vests this Court with jurisdiction in that the claims alleged

3  herein arise under the laws of the United States.  Fed. R. Civ. Pro. 65 and 57 provide authority

4  for this Court to issue declaratory and injunctive relief.

5        2.        28 U.S.C. § 1367 vests this Court with jurisdiction over state law claims.

6        3.        Venue lies in the District of Nevada, Southern Division, pursuant to 28 U.S.C. §

7  1391(b), because a substantial part of the events or omissions occurred in said District and

8  Division.

9        4.        All conditions precedent to jurisdiction under 42 U.S.C. § 12117j(a)(incorporating

10  42 U.S.C. § 2000e-5(e)) have been met:

11              A.        A charge of employment discrimination on the basis of disability was filed

12  with the Equal Employment Opportunity Commission (EEOC) October 5, 2016, or within 180

13  days of the commission of the unlawful employment practice;

14              B.        A notification of the Right to Sue was received from NERC on November

15  3, 2017;

16              C.        This Complaint has been filed within ninety days of receipt of EEOC

17  Right to Sue notification.

18        *Parties*

19        5.        Plaintiff, RAYSAWN BROWN ["Raysawn"], is a citizen of the United States who

20  resides in Las Vegas, Nevada.

21        6.        Defendant, SUTHERLAND GLOBAL SERVICES, Inc. ["Sutherland"], is a

22  corporation organized under the laws of the State of New York, doing business in Las Vegas,

23  Nevada, as a call center.

24

1   7.   Sutherland employs more than 15 people and is an "employer" and "covered entity"

2   within the meaning of 42 U.S.C. §§ 12111(5)(A), 12111(2), and NRS 613.310(2).

3   *General Allegation of Agency*

4   8.   At all times, Sutherland and each of its respective agents, contractors, and

5   employees were the agents and employees of Sutherland, and each was acting within the purpose

6   and scope of said agency and employment.  Whenever reference is made to any act, omission, or

7   transaction of Sutherland, such allegation shall be deemed to mean that the principals, officers,

8   directors, employees, agents, contractors and/or representatives of Sutherland committed, knew

9   of, performed, authorized, ratified, and/or directed such act, omission, or transaction on behalf of

10   Sutherland while actively engaged in the scope of their duties.

11   *Statement of Facts*

12   9.   Raysawn began work at Sutherland as a Webtech on March 14, 2016.  Raysawn

13   would qualify for health care benefits after 9 months with Sutherland.

14   10.   At the time of hire, Raysawn told Sutherland that he needed early morning start

15   times for his shift because of regular and mandatory doctor's appointments.  Sutherland

16   complied with this request.

17   11.   Raysawn is a person living with the human immunodeficiency virus [HIV].

18   Raysawn was asymptomatic, but needs regular and mandatory doctor visits to remain healthy.

19   12.   In June of 2016, Raysawn experienced a worsening of his health that necessitated

20   increased visits to his doctor.

21   13.   Raysawn health required him to take off June 2, 2016, and July 12, 2016.

22

23

24

14.     Shortly after this absence, Ms. Archuleta, Raysawn's supervisor, changed Raysawn's early morning shift to later in the day.  This caused Raysawn to miss his doctor's appointment.

15.     Raysawn complained to Ms. Archuleta, revealed his HIV status to her, and she promised to change Raysawn's shift.  She required more proof of his medical condition before granting the accommodation.

16.     Raysawn attempted to submit his medical information to Sutherland's human resources office.  Ms. Archuleta objected and demanded to receive all medical information.

17.     Despite Raysawn submitting the requested medical information to Ms. Archuleta, Sutherland did nothing to change Raysawn's shift back to early morning.

18.     Sutherland did not engage in the interactive process.

19.     In September of 2016, Raysawn spoke to Ms. Archuleta's supervisor, Daniel Stroebling, about unfounded and false rumors that Raysawn was attempting to spread HIV to coworkers.

20.     On September 30, 2016, Ms. Archuleta spoke with Raysawn about cutting calls short and not giving calls enough attention.  Raysawn explained to Ms. Archuleta that he was experiencing issues with a new retroviral regime that he recently began and that he was trying to be more concise with calls as she had previously requested.

21.     On October 3, 2016, Raysawn experienced debilitating effects from his medication.  He became extremely ill and needed to see his doctor immediately.

22.     Raysawn could not locate a supervisor and rushed to his doctor without supervisor approval.

1    23.    Upon his return on October 5, 2016, Raysawn presented a doctor's note to Ms.

2  Archuleta describing his emergency on October 3rd and the need to leave work.

3    24.    Ms. Archuleta suspended Raysawn without pay based on his leaving work

4  without permission and his dropped calls.  No return date was given by anyone at Sutherland.

5    25.    Raysawn did not return to work.  He texted Ms. Archuleta and visited the human

6  resources department at Sutherland.  Only when he applied for unemployment and SNAP (food

7  stamp) benefits did he find out that Sutherland terminated him on October 6, 2017.

8                    FIRST CLAIM:  Failure to Accommodate/ADA

9    26.    Raysawn is an individual with a disability as defined in 42 U.S.C. § 12102(2).

10  Raysawn has HIV, which substantially limits one or more of his major life activities, has a record

11  of such impairment, and is regarded by Sutherland as having an impairment.

12    27.    Raysawn is a qualified individual within the meaning of 42 U.S.C. §§ 12111(8),

13  in that Raysawn is an individual with a disability, who with reasonable accommodation of a

14  flexible work schedule, can perform the essential functions of his position with Sutherland.

15    28.    Raysawn requested an accommodation from Sutherland to allow him to start his

16  work shift earlier in the morning so that he could attend his regular doctor visits.

17    29.    Sutherland failed to accommodate Raysawn's disability and failed to engage in

18  the interactive process.

19    30.    Sutherland's failure to accommodate Raysawn's disability constitutes

20  discrimination against him with respect to the terms and conditions of his employment and

21  constitutes a violation of 42 U.S.C. §§ 12112(b)(5)(A).

22    31.    As a direct and proximate result of Sutherland's discrimination, Raysawn has

23  suffered lost wages, lost benefits, and lost employment opportunities.

24

1      32.     Sutherland's failure to make a reasonable accommodation to Raysawn has caused,

2   continues to cause, and will cause Raysawn to suffer substantial pecuniary loss, mental anguish,

3   loss of enjoyment of life, pain and suffering, and other non-pecuniary loss.

4      33.     Sutherland's discriminatory conduct against Raysawn was taken with malice and

5   reckless indifference to Raysawn's federally protected right.

6                    SECOND CLAIM:  Wrongful Termination on the Basis of Disability

7      34.     Raysawn is a qualified individual with a disability within the meaning of 42

8   U.S.C. § 12111(8), in that he is an individual with a disability, who, with reasonable

9   accommodation, can perform the essential functions of his position at Sutherland.

10      35.     Sutherland's termination of Raysawn was in violation of 42 U.S.C. § 12112,

11   which prohibits discrimination on the basis of disability, in that Sutherland terminated Raysawn

12   solely on the basis of his disability, despite his ability to perform the essential functions of his

13   position with Sutherland.

14      36.     The controversy over Raysawn's dropped calls and leaving without permission

15   was manufactured by Ms. Archuleta to provide a pretext for discrimination based on Raysawn's

16   disability.  The only change in circumstance at the time Raysawn's work schedule changed from

17   mornings to afternoons and was not changed back to mornings upon request was the revelation

18   to Ms. Archuleta that Raysawn had HIV.

19      37.     As a direct consequence of Sutherland's termination of Raysawn, Sutherland

20   discriminated against him with respect to the terms and conditions of employment.

21      38.     As a direct and proximate result of Sutherland's discrimination, Raysawn has

22   been deprived of economic benefits, including, but not limited to, lost back fringe benefits, loss

23

24

1   of job opportunities, and pain and suffering, for which he is entitled to money damages and other

2   remedies.

3        39.    Sutherland's termination of Raysawn has caused, continues to cause, and will

4   cause Raysawn to suffer substantial pecuniary losses including front pay and front benefits,

5   mental anguish, future pain and suffering, loss of enjoyment of life, and other non-pecuniary

6   losses.

7                    THIRD CAUSE OF ACTION: VIOLATION OF NEVADA LAW

8        40.    The actions of Sutherland described above constitute unlawful and discriminatory

9   employment practices under NRS 613.310.

10       41.    As a result of Sutherland's discriminatory acts, Raysawn suffered and will

11   continue to suffer monetary damages and damages for mental anguish and humiliation unless

12   and until the court grants relief.

13                                      RELIEF

14       WHEREFORE, Raysawn prays for entry of judgment against Sutherland, as follows:

15       A.    Declares that Sutherland has violated 42 U.S.C. § 12101, *et seq.* ["ADA"] and

16   NRS 613.310;

17       B.    Enjoins and permanently restrains the violation of the ADA and Nevada law by

18   Sutherland;

19       C.    Requires Sutherland to pay all earnings Raysawn would have received, but for the

20   discriminatory practices, including, but not limited to, front pay and back pay and otherwise lost

21   and future benefits;

22       D.    Awards Raysawn the costs of suit and attorney's fees, pursuant to 42 U.S.C. §

23   12205;

24

7

E.      Directs Sutherland to pay Raysawn such compensatory damages and damages for

pain and suffering in an amount to be determined at trial;

F.      Impose such punitive damages as may be warranted;

G.      Provide Raysawn with further equitable relief, including, but not limited to,

reinstatement with Sutherland; and

H.      Awards all other relief as the court deems just.

DATED this 15th day of December, 2017.


Respectfully Submitted,

NEVADA LEGAL SERVICES, INC.


_____/s/ *David Olshan*_____

DAVID OLSHAN, ESQ.
Nevada State Bar No. 4126
CHRISTENA GEORGAS-BURNS, ESQ.
Nevada Bar No. 14314C
NEVADA LEGAL SERVICES, INC.
530 South 6th Street
Las Vegas, Nevada 89101
(702) 386-0404 x516
Facsimile (702) 388-1641
dolshan@nlslaw.net
Attorneys for Plaintiff